## STROUD, ex'r vs. VANZANT, ad.

1. CHANCERY JURISDICTION: *Where the court having jurisdiction for one purpose may dispose of the whole case.*

When a Court of Chancery takes jurisdiction of a case for a purpose within its jurisdiction, it may, with the consent of the parties, retain it and dispose of the whole case.

2. *Waiver of objection to.*

If objection to the jurisdiction is raised in this Court for the first time, and there was any vestige of jurisdiction, the cause will not be dismissed.

APPEAL from *Boone* Circuit Court.

Hon. JAMES H. HUCKBERRY, Circuit Judge,

WALKER, J.:

Andrew Vanzant filed his bill in the Boone Circuit Court, in which he alleged that as administrator of the estate of William M. Vanzant, he held a claim against the estate of William P. Stroud, deceased, for eleven hundred dollars. That he presented the claim to the Probate Court for allowance and classification. That the parties appeared in that Court, and after the evidence was heard, his claim was established, allowed and ordered to be classed. That the executrix of the estate of Stroud took an appeal from the judgment of allowance to the Circuit Court, but that before the transcript of the judgment was made out, the records of the Probate Court, including the judgment of allowance and appeal, were destroyed by fire.

The claim which had been allowed and the consideration upon which it was founded were set out in the bill, in which it was averred that since the rendition of the judgment the County of Boone had been established. That all of the parties resided in that part of Carroll County, which now composes part of Boone, and concluded with a prayer, that the records so destroyed be established and certified to the Probate Court of the County of Boone, and for general relief.

The defendant appeared and admitted of record the truth of all the material allegations of complainant's bill necessary to establish the lost records; but denied the validity of the claim, and thereupon the parties agreed of record that the issue of facts as to the validity of the claim should be tried *de novo* before the Court sitting as a jury upon the issue of *nil debit* and payment, the case to be set for hearing at the next term of the Court waiving exceptions to all irregularities. At the next term of the Court the case was tried before the Court, evidence was introduced by both parties, and the Court found that the sum of six hundred dollars debt, and three hundred and ninety-five dollars damages was due to the plaintiff, for which judgment was rendered.

The defendant excepted to the finding of the Court and the Judge certified that the depositions, copied into the transcript, were all of the evidence in the case.

The defendant has appealed to this Court and by her counsel contends that the Court of Chancery was incompetent to try the issues of fact, and that its jurisdiction under the state of case made, was limited to the questions of the existence, and the destruction of the records of the Probate Court, and that its appropriate and only judgment should have been to establish the lost records and to certify the same to the Probate Court.

It is true that this would have been the proper disposition of the case uninfluenced by the agreement of the parties. To this extent jurisdiction is expressly given by statute, and the Court having taken jurisdiction of the case for a purpose clearly within its jurisdiction, the question is whether by consent of parties the Court may not retain its jurisdiction, settle the question of indebtedness and finally dispose of the whole case.

It has been repeatedly held by this Court, that when a Court of Chancery has once rightfully acquired jurisdiction of a case, it may retain and fully dispose of it. No objection was made

to the jurisdiction of the Court, so far from this it was expressly agreed by the parties that the Court should retain jurisdiction and try the case waiving exceptions to all irregularities. If objection had been made to the jurisdiction of the Chancery Court, that Court under the code practice is authorized to transfer the case from the chancery to the common law docket for trial. Such was held to be the proper practice in the case of *Berry, admr.*, v. *Hardin et al.* manuscript opinion of this Court; but no objection was then made, and after final trial and judgment against them, it comes with a bad grace from them to object, for the first time in this Court, that the Court which by their own consent had tried the case, had no jurisdiction of it. We have repeatedly held that where the parties go to trial without raising the question of jurisdiction until the case comes before us, or even until after trial and judgment in the Court below, this Court will lay hold of any vestige of jurisdiction before it would dismiss a cause and send the parties to a court of law. *Daniels* v. *Street*, 15 Ark., 307: *Mooney* v. *Brinkley*, 17 Ark., 340; *King* v. *Payan*, 18 Ark., 583.

We are sustained by these decisions in holding that the objection to the jurisdiction of the Court is out of time, and under the state of case before us untenable.

It is next contended by the counsel that the finding of the issues of fact by the court is without sufficient evidence.

The counsel on both sides have argued the question as if a motion for a new trial had been made in the court below and overruled, and in point of fact, such would seem to be the case, as we find in the appellee's brief what purports to be a copy of the several grounds set forth in the motion for a new trial, but the transcript before us discloses no such state of case. It is true that an issue of fact was tried under the Code practice, by the court sitting as a jury, but it is also true that the trial was had in

a court of chancery by consent, and we are not aware that the practice of moving for a new trial and bringing the evidence before this court by bill of exceptions, has been established, or that there is ordinarily a necessity for it.

The usual practice is to set the cause in chancery for hearing upon the pleadings, exhibits and depositions, which give evidence of record of the state of case before the Chancellor. In this case the defendant excepted to the finding of the court, and the judge has certified that the depositions found in the transcript were all the evidence in the case. No question has been raised by the counsel on either side in regard to the manner of getting the facts before this court.

In view of which and of the peculiar circumstances of the case we will proceed to consider the remaining question, which is, whether the finding of the court, sitting as a jury, was or not sustained by the evidence.

The court found that plaintiff's intestate sold to defendant's testator a tract of land, and that there was still due and unpaid the sum of $600 principal, with interest thereon at the rate of six per cent. per annum, amounting to $395.

The counsel for appellant contend that the $600 certificate of Brooks, quartermaster, was received by Vanzant as part payment for the land, absolutely and at his risk. That this was an executed contract, and that full payment was made at the time the deed was executed. The evidence which best sustains this position was that of their witness, Spring. He states that he was present at the house of Stroud, at the time when both parties were present; that he examined the deed and saw it delivered; that Stroud paid Vanzant a horse at $100, a yoke of oxen at $75, $330 in war bonds, and a quartermaster's certificate of Brooks' Confederate regiment, for $600. That Vanzant objected to taking the certificate in payment, and that Stroud replied, that

he must take it or it was no trade; that Vanzant took the certificate, and witness thinks that Stroud remarked, he must take it as a man does his wife, better for worse. Witness told Vanzant that the value of the certificate depended upon the success of the Confederate war.

Witness Vanzant, who also professed to have been present when the trade was made, says, it was made at Vanzant's house, two miles from Stroud's, that witness Spring was not there. That Stroud paid as the consideration for the land, a horse at $150, a yoke of oxen at $50, a quartermaster's certificate of Brooks' regiment for $600, which was given by the quartermaster to Stroud for mules furnished that regiment, and a note on one Carroll; that at the time the quartermaster's certificate was offered to Vanzant, he asked Stroud what would be done in case it was not good, Stroud replied, that he would make it good; that Vanzant never got anything for the certificate, and had it on hand at the close of the war.

These two witnesses differ in their statements as to the place where the trade was made, the value of the property paid, the remaining payment, whether in war bonds or Carroll's note, as well as the terms upon which the certificate for $600 was to be taken. Witness Crane corroborates the statement of Vanzant as to the price of the oxen, says that he and one Britton were called upon to value the oxen at Stroud's store, and valued them at $50. He also states that Stroud took out some receipts which were spoken off as quartermaster's receipts of Brook's battalion. Vanzant said he was afraid of the receipts, Stroud replied, do you not think that I am too much of a gentleman to pay debts with nothing; witness heard nothing said about a land trade. Witness Smith lived near to, and was well acquainted with both the parties. Stroud was a long-headed, shrewd business man, a good trader and a gentleman. Vanzant an honest hard-working

man, not considered bright. This witness conversed with Stroud about his trade with Vanzant; told Stroud that he would not have taken such pay for the land as he understood Vanzant had, that he considered the quartermaster's certificate worthless. Stroud replied that if the certificate was not good, he was. That if Vanzant did not get the money on the certificates, he would take them back and pay him· the money on them. Witness Campbell states that he was at Stroud's store when Vanzant came in and told Stroud that he had sent the quartermaster's certificate to Little Rock, in order to draw the money, but that the proper authorities there refused to recognize the claim, or to pay it. Stroud told Vanzant that if they would not pay it, he would, that Vanzant should not lose that much on his land. The evidence is clear that the land was worth $1,200.

This is all of the evidence bearing upon the question to be decided, which is : does the evidence sustain the verdict or finding of the court ? We shall not consider this evidence as conducing to prove an after agreement on the part of Stroud to take back the certificate for $600, but as tending to prove what the contract or agreement was at the time the contract was made. If the certificate was taken as an absolute payment of that much, there might arise a question as to whether the certificate was of any value whatever; or in consideration of the fact· it was rejected as unauthorized by the Confederate authorities, whether it was of more value than a counterfeit bill or a forged note would have been; but aside from this, we will refer to all of the evidence to ascertain whether this was an absolute or a conditional payment. If, as the testimony of witness Spring conduces to prove, this Confederate certificate was to be taken as an absolute payment of that much, in the language of the witness, as a man takes his wife, better for worse, why was it, that when informed by Vanzant that the Confederate authorities refused to recognize

the claim or pay it, Stroud, instead of promising to pay, did not reply, you took it better for worse, if not paid it is your loss, not mine? Why, when witness Smith told him he considered the certificate worthless, did he not say it was no difference to him, Vanzant took it with the chances of getting the pay? Instead of which he replied, "if the receipt is not good, I am; if he does not get the money on the certificate, I will take it back and pay him the money."

We think it a fair presumption that if in fact the receipt or certificate had not been taken with an understanding that if not paid by the Confederate authorities, he would pay, he would have upon those several occasions have so stated, and that he promised to pay because it was his original agreement to do so. This all goes to sustain witness Vanzant's evidence.

When we take all this evidence together and weigh it carefully, we are led to conclude that the weight of the evidence is in favor of the verdict or finding of the court.

Let the judgment be in all things affirmed.